UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-70 (PJS/KMM)

UNITED STATES OF AMERICA,

Plaintiff,

v.

(1) JEREMIAH LEE IRONROPE,

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and Jeremiah Lee Ironrope (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Counts 3 and 4 of the Indictment, which charge the defendant with Carjacking in violation of 18 U.S.C. §§ 2 and 2119(1) (Count 3); and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 4). The United States agrees to dismiss Counts 1, 2, and 5 at the time of sentencing.

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Counts Three and Four of the Indictment. In pleading guilty, the defendant admits the following facts, and further agrees that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

On or about August 28, 2020, the defendant and his co-defendant Krisanne Benjamin ("Benjamin") drove a maroon SUV to a parking lot in Richfield, Minnesota. The defendants parked the SUV in a parking lot near A.M. and A.M.'s 2017 Audi A4, bearing Minnesota license plate DRU-488. The defendant approached A.M. and pointed a Remington 870 12-gauge shotgun, with a sawed-off barrel, bearing serial number W893573, at him. The defendant demanded A.M.'s car keys, which A.M. provided. The defendant took several minutes attempting to turn on A.M.'s vehicle, while Benjamin kept watch from the maroon SUV. Eventually, the defendant started A.M.'s vehicle and drove away, with Benjamin following in the maroon SUV.

On or about August 29, 2020, at approximately 3:35 p.m. (about 19 hours after the carjacking), the Minnesota State Patrol used GPS data to track and locate the stolen Audi, which was driven by the defendant and occupied by Benjamin. Officers attempted to stop the vehicle, but the defendant drove away at a high rate of speed, while cutting across multiple lanes of traffic, swerving between cars, and driving through red lights. During the flight from police, Benjamin got out of the vehicle and fled on foot while the defendant continued fleeing in the Audi. Police lost sight of the vehicle but found it shortly thereafter running and unoccupied in Minneapolis.

The vehicle had been partially spray-painted black. Inside the vehicle, officers found a variety of property including a stolen wallet, bottles of spray paint, a hat, gloves, and receipts. Police also found a used 12-gauge shotgun shell under the driver's seat. The defendant's fingerprint(s) were found on the driver's door interior handle, and the exterior driver's side rear door of the car. The defendant's fingerprints were also found on a cell

2

phone, the stolen wallet, and a plastic bag in the car. Benjamin's fingerprints were found on a cigarette package and the exterior front passenger side door.

The defendant agrees the Audi A4 was transported, shipped, or received in interstate or foreign commerce. The defendant further agrees that he used force, violence or intimidation with the intent to cause serious bodily harm in order to obtain the vehicle from A.M.

Although the defendant is not pleading guilty to Counts 1 of the Indictment, the defendant agrees to the following facts and acknowledges that the Court may consider these facts pursuant to U.S.S.G. § 1B1.2(c) and 18 U.S.C. § 3553(a) and for purposes of calculating restitution at sentencing:

- Count 1: On or about July 26, 2020, at about 11:07 p.m., the defendant and Benjamin were standing by some parking spaces in Maple Grove, Minnesota, when S.M. arrived in his black 2008 Lexus ES350 (Minnesota license plates DCH278). The defendant approached S.M. and asked for a ride to the gas station. When S.M. refused, the defendant demanded S.M.'s car keys and hit S.M. in the head three times with a collapsible baton. S.M. gave the defendant his keys and the defendants entered S.M.'s vehicle and drove away. S.M. was transported to Maple Grove Hospital with head injuries, which required sutures. In a post-*Miranda* statement, the defendant admitted to committing this carjacking.

The defendant also agrees to the following facts and acknowledges that the Court may consider these facts pursuant to 18 U.S.C. § 3553(a) and for purposes of calculating restitution at sentencing (but not pursuant to U.S.S.G. § 1B1.2(c)):

- Count 2: In the early morning hours of August 7, 2020, R.G. was on his paper delivery route in his 2018 Chevrolet Tahoe (Minnesota license plate CBX-405) in Saint Paul, Minnesota. Defendant and Benjamin approached R.G. as was walking back to his vehicle during a stop on his delivery route. R.G. was struck from behind and knocked unconscious. The defendant and his

co-defendant then took R.G.'s keys and vehicle, as well as his cell phone and wallet. R.G. was hospitalized at United Hospital for his injuries.

Police learned R.G.'s credit cards had been used at several businesses shortly after the assault. Surveillance footage from one business (a Holiday gas station) showed Benjamin driving the stolen Tahoe with the defendant as the passenger at approximately 6:58 a.m. Benjamin entered the gas station and used the victim's credit card. At approximately 8:35 a.m., the defendants used R.G.'s credit card again at a Holiday gas station. Finally, at about 9:15 a.m., the defendant drove the stolen Tahoe (with Benjamin as a passenger) to a Target store, where the defendants used R.G.'s credit card.

- Count 5: On or about December 20, 2020, J.S. was sleeping in his silver GMC Terrain (Minnesota license plate CNR424) in Saint Louis Park, Minnesota. The defendant knocked on J.S.'s window and pointed what the victim believed to be a small black handgun at him and demanded his wallet and cell phone. After J.S. gave the defendant his cell phone, the defendant ordered J.S. out of the car, and the defendant entered the vehicle. The defendant then drove away in J.S.'s vehicle and used J.S.'s credit card later that morning at a Repair Rite automotive and a Home Depot.

- December 25, 2020: On or about December 25, 2020, A.D. parked his 2016 Chrysler 200 (Minnesota license plate CKM252) in the parking lot of an apartment building on Hampden Avenue in Saint Paul. As A.D. was walking to the apartment building, defendant approached and pointed what the victim believed to be a pistol (wrapped in a plastic bag) at him and demanded his keys. A.D. handed over the vehicle keys and defendant entered the vehicle and drove away. On December 27, 2020, Minneapolis police recovered the vehicle, running and unoccupied with the front driver's side tire broken off.

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case and agrees to withdraw those motions already on file.

4.    **Statutory Penalties (Count 3)**. The parties agree that Count 3 of the Indictment carries the following statutory penalties:

4

    a.       a maximum term of 15 years' imprisonment;

    b.       a supervised release term of not more than 3 years;

    c.       a fine of up to $250,000; and

    d.       a mandatory special assessment of $100.

5.    **Statutory Penalties (Count 4)**.  The parties agree that Count 4 of the Indictment carries the following statutory penalties:

    a.       a mandatory minimum sentence of 7 years' imprisonment to run consecutively to the term of imprisonment imposed on Count 3;

    b.       a maximum term of life imprisonment;

    c.       a supervised release term of not more than 5 years;

    d.       a fine of up to $250,000; and

    e.       a mandatory special assessment of $100.

6.    **Revocation of Supervised Release**.  The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

7.    **Guideline Calculations**.  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*.  Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing.  The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a.   Base Offense Level. The parties agree that because of the Grouping Provisions under U.S.S.G. §3D1, each Count's Total Offense Level must be determined separately before being combined for the highest total offense level. The parties agree that the base offense level for each of Counts 1 and 3 of the Indictment is **20**. U.S.S.G. § 2B3.1(a).

b.   Specific Offense Characteristics and Chapter 3C adjustments. The parties agree that following Specific Offense Characteristics and Chapter 3C adjustments apply for each Count:

|  | Count 1 | Count 3 |
|---|---|---|
| Use of a Firearm or Dangerous Weapon, U.S.S.G. § 2B3.1(b)(2) | +4 | +0 |
| Degree of Bodily Injury, U.S.S.G. § 2B3.1(b)(3) | +2 | +0 |
| Offense involved Carjacking, U.S.S.G. § 2B3.1(b)(5) | +2 | +2 |
| Reckless Endangerment During Flight, U.S.S.G. § 3C1.2 | +0 | +2 |

c.   Chapter 3D Adjustments. The parties agree that the Grouping Provisions set forth in Guidelines Sections 3D1.1 – 3D1.5 apply to determine the total combined offense level and further agree that robbery offenses (USSG § 2B3.1) are specifically excluded from being grouped together under USSG § 3D1.2. The parties further agree that the **Count with the highest offense level is Count 1, with an offense level of 28,** and that the offense level should be **increased by 2 levels** because Counts 1 and 3 constitute two "Units" under U.S.S.G. § 3D1.4(a).

d.   Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **3-level** reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of

6

responsibility. U.S.S.G. §3E1.1. The parties agree that other than as provided for herein no other Chapter 3 adjustments apply.

e.  <u>Criminal History Category</u>. Based on information available at this time, the parties believe that the defendant's **criminal history category is IV**. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

f.  <u>Guideline Range</u>. If the total offense level is **27** and the Criminal History category is IV, the parties agree that Guidelines range is **100-125 months** imprisonment.  The Sentencing Guidelines range for Count 4 is **84 months** to run consecutive to the term of imprisonment imposed on Count 3. Together, this results in a cumulative Guidelines range of **184-209 months'** imprisonment.   U.S.S.G. §§ 2K2.4(b), 5G1.2(a).

g.  <u>Fine Range</u>. Based on a total offense level of **27**, the fine range is **$25,000 to $250,000**. U.S.S.G. § 5E1.2(c)(3).

h.  <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least one year but not more than three years for Count 3, and a term of supervised release of at least two years but not more than five years for Count 4. U.S.S.G. § 5D1.2(a)(1)-(2).

i.  <u>Sentencing Recommendation and Departures</u>. The parties reserve the right to make motions for departures from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties also reserve the right to argue for a sentence outside the applicable Guidelines range.

8.  **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court.  The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category.   The Court may also depart from the

applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

10. **Restitution.** The defendant understands and agrees that 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply to this case and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant agrees that he owes restitution to the victims of Counts 1 and 3 of the Indictment pursuant to 18 U.S.C. § 3663A(a)(1), as well as to the victims of Count 2, Count 5, and the victims of the December 25, 2020 carjacking discussed in paragraph 2, above, pursuant to 18 U.S.C. § 3663A(a)(3). The defendant agrees that any amount of restitution ordered will be joint and several with his co-defendant as to Counts 1-3. The defendant understands that the amount of restitution will be agreed to by the parties or litigated before the Court prior to sentencing.

The defendant represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and

8

fines ordered by the Court.  As part of this Agreement, the defendant will complete, under penalty of perjury, a financial disclosure form—provided by the United States—listing all the defendant's assets and financial interests valued at more than $1,000.  The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstance.  The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

11.   **Forfeiture**.  The defendant agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of that offense, including, but not limited to a Remington 870 12 gauge shotgun, with a sawed-off barrel, serial number W893573, seized on or about December 8, 2020, from a stolen Dodge Ram that had been recently occupied by defendant.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property.  The defendant waives all statutory and constitutional defenses to the forfeiture.

9

The defendant also agrees that the United States may forfeit any and all other property subject to forfeiture as a result of the defendant's plea by any means provided by law.

12. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974. 5 U.S.C. §§ 552, 552A.

13. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Date: 9-9-2021

W. ANDERS FOLK
Acting United States Attorney


BY: NATHAN H. NELSON,
Assistant U.S. Attorney


Date: 9/07/2021

J. IRON ROPE
Jeremiah Lee Ironrope
Defendant


Date: 9/07/2021

Patrick Cotter
Counsel for Defendant