UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-71 (PJS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) GOVERNMENT'S SENTENCING |
| | ) MEMORANDUM |
| (1) JEREMIAH LEE IRONROPE, | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Nathan H. Nelson, Assistant United States Attorney, hereby respectfully submits its position and memorandum on sentencing.

## BACKGROUND

In the second half of 2020, the defendant Jeremiah Ironrope ("defendant")—often with the assistance of his co-defendant Krisanne Benjamin ("Benjamin")—engaged in string of violent crimes, including five carjackings. In these carjackings, defendant used weapons, including handguns and a sawed-off shotgun. He also used threats of violence, and (when necessary) actual violence that sent two of his victims to the emergency department or hospital. This violent conduct continued unchecked until January 2021, when Minneapolis police finally arrested defendant on numerous outstanding warrants.

On March 23, 2021, a grand jury returned an Indictment charging defendant with four counts of Carjacking (Counts 1, 2, 3, and 5) and one count of Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence (Count 4). (ECF 1).

The defendant pleaded guilty to Counts 3 and 4 of the Indictment. (ECF 90). As part of his plea agreement, defendant stipulated to having committed all the carjackings alleged in the Indictment, as well as to committing an uncharged carjacking that occurred on December 25, 2020. (ECF 90). The parties agreed that the Court should consider the conduct underlying the carjackings in Counts 1 and 3 for the purpose of calculating his sentencing Guidelines pursuant to USSG 1B1.2(c), but should consider the conduct underlying the other carjackings only for purposes of fashioning an appropriate sentence under 18 U.S.C. § 3553(a).

On November 29, 2020, U.S. Probation issued a presentence investigation report ("PSR") in this matter. (ECF 106). Consistent with the parties' plea agreement, the PSR calculated a combined offense level of 30 for the carjackings contained in Counts 1 and 3. (PSR ¶¶ 31-53). After factoring in an adjustment for acceptance of responsibility, the PSR calculated a total offense level of 27 for the carjackings, which—combined with a criminal history category of IV—results in an advisory Guidelines range of 100-125 months' imprisonment. (PSR ¶¶ 55-57, 67-69, 122). Count 4 (the firearm brandishing count) carries a mandatory minimum term of 84 months' imprisonment, which must be imposed consecutively to the term of imprisonment for the carjackings. (PSR ¶¶ 49, 122). Neither party has any objection to the PSR or the Guidelines calculations contained therein.

## POSITION ON SENTENCING

The only issue before the Court is what constitutes a reasonable sentence in light of the factors enumerated in Title 18, United States Code, Section 3553(a). In fashioning a sentence, Section 3553(a) requires the Court to consider the nature and circumstances of

the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense; the need for deterrence; the need to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). For the reasons stated below, the § 3553(a) factors support a sentence of 125 months (at the top of the Guidelines range) for Count 3, followed by a consecutive sentence of 84 months for Count 4, for a total term of imprisonment of 209 months.

      A.     **The Present Offenses are Extremely Serious**

Defendant's criminal conduct is egregious. In the six months between June 2020 and December 2020, defendant committed five violent carjackings. Defendant's crimes contributed to astounding and unprecedented surge in carjackings in the Twin Cities metro area since 2020.[1] These crimes are especially serious because they do tremendous damage to both the victims and the community as a whole. As others have noted, these attacks are often swift and frightening for the victims, and feel akin to ambushes.[2] The attacks also terrorize the community writ-large and undermine citizens' collective feeling of safety in their homes and streets. That is particularly true because the crimes are random and can seemingly occur almost anywhere and to almost anyone. These same factors also make

---

[1] See, e.g., https://www.startribune.com/staggering-surge-in-violent-carjackings-continues-citywide/573257391/; https://www.mprnews.org/episode/2021/12/14/why-has-a-wave-of-carjackings-hit-the-twin-cities; https://www.axios.com/local/twin-cities/2021/11/09/carjacking-spree-south-minneapolis-ken-norms-video.

[2] See https://www.startribune.com/twin-cities-area-sees-surge-in-carjackings-putting-drivers-on-edge/600116335/.

carjackings difficult for police to solve and hold perpetrators accountable, which contributes to the general feeling of helplessness against the violence.

Defendant committed the first carjacking on June 26, 2020, a day in which he and Benjamin had already stolen a trailer from a home in Maple Grove, crashed and abandoned the trailer on the highway, then assaulted a woman in parking garage and robbed her of her purse. (PSR ¶¶ 8-9). At 11:00 p.m., about an hour committing the robbery in the parking garage, defendant and Benjamin approached S.M. outside of his residence and robbed him of his vehicle. (PSR ¶ 10). During the carjacking, defendant struck S.M. three times in the head with a collapsible baton, sending him to the emergency department for his injuries. (PSR ¶ 10). This attack caused not only physical wounds to S.M., but also psychological ones. As S.M. stated in his victim impact statement: "I used to feel safe wherever I went even if it was dark because I believed America is a safe country for everyone to stay. I no longer feel that way anymore. I view everyone as a[n] attacker who wants to harm me, so I distance myself from people." (PSR ¶ 23).

Less than two weeks later, on August 7, 2020, defendant sent a man to the hospital during another violent carjacking. This time, defendant and Benjamin targeted the victim (R.G.) on his early-morning paper delivery route, with defendant violently ambushing R.G. by striking him from behind and knocking him unconscious. (PSR ¶ 11). Defendant and Benjamin then took R.G.'s vehicle and used his credit cards at two gas stations and a Target store. (PSR ¶ 12).

Three weeks later, on August 28, 2020, defendant and Benjamin committed their third violent carjacking. This time, defendant escalated the danger inherent in his conduct

4

by introducing a firearm. In particular, defendant approached A.M. in a parking lot, brandished a sawed-off 12-guage shotgun[3] at him, and demanded his car keys. (PSR ¶ 13). Defendant took the vehicle, fled the scene, and attempted to disguise the vehicle by partially spray-painting it black. (PSR ¶¶ 13-14). The next day, defendant compounded his crime by leading police on a dangerous high-speed chase in the stolen vehicle, during which he put still more lives at risk by cutting across lanes of traffic, swerving between cars, and driving through red lights before ultimately eluding police and abandoning the vehicle. (PSR ¶ 14). In total, defendant caused over $20,000 in property damage to the vehicle. (PSR ¶¶ 23, 43).

On December 20, 2020, defendant committed his fourth carjacking—this time using a new firearm. Specifically, defendant targeted a man (J.S.) who was sleeping in his car before work. (PSR ¶ 17). Defendant pointed a handgun at J.S., took his keys, and demanded his wallet and phone—even threatening to shoot J.S. if he did not provide his passcode for his phone. (*Id.*). Defendant then took J.S.'s vehicle, and he and Benjamin subsequently used J.S.'s credit cards at several retailers. (*Id.*). Defendant ultimately abandoned the vehicle and police found it a week later. The vehicle had been set on fire, causing thousands of dollars of property damage. (PSR ¶¶ 17, 23).

A mere five days later, on Christmas Day 2020, defendant committed his fifth and final carjacking. This time, defendant pointed a handgun wrapped in a plastic bag at A.D.

---

[3] This was a firearm that defendant should not have even have been *possessing*—due to his status as a convicted felon and it being a restricted sawed-off weapon—let alone *using* to commit a violent crime. 18 U.S.C. § 922(g)(1); 26 U.S.C. §§ 5841, 5845(a)(1)-(2), 5861(d), and 5871.

and told him to "give me the key [to the car] or I'll shoot you in the head." (PSR ¶ 19.) Defendant then left in A.D.'s car. Police found the car two days later, running but unoccupied, with the front tire broken off—resulting in thousands of dollars of property damage and losses to the victim. (PSR ¶¶ 19, 23).

In sum, defendant engaged in a series of carjackings that showed no signs of abating prior to his arrest on January 13, 2021. His conduct was wanton and violent. His victims were targeted seemingly at random and either threatened with firearms or assaulted with blunt objects. Although defendant had an accomplice for many of the carjackings, defendant always took the lead. It was defendant (and not his accomplice) who was the person approaching the victims and using or threatening violence. It was defendant who was the person driving the stolen vehicle and putting lives at risk by recklessly fleeing police at high speeds. This demonstrates that defendant was motivating force behind these crimes. Defendant's conduct was also senseless, with violence used to take vehicles for no discernible purpose other than to use for a short time and then discard, causing tens of thousands of dollars in damage in the process. There is no evidence that these were subsistence crimes, motivated by poverty or even a need to support drug addiction. Rather, they were purely destructive acts that showed a repeated and callous disregard for the lives and property of defendant's fellow citizens.

    **B.**    **The Present Offenses Were Committed During the Court of a Lengthy Pattern of Criminal Activity**

The egregious nature of the present offenses is also exacerbated by the fact that the carjackings were committed as part of a months-long string of alleged criminal conduct by

6

the defendant and his co-defendant. Specifically, between January 2020 and January 2021, defendant engaged in a variety of other criminal conduct and accumulated approximately 20 separate criminal cases that currently remain pending in state court. Much of this other criminal activity was also very violent in nature (as discussed in more detail below) and the Court can and should consider this conduct as aggravating in fashioning a sentence. *See United States v. Boyd*, 956 F.3d 988, 991-92 (8th Cir. 2020) (a court may consider even unproven facts and allegations underlying other arrests and crimes if they are in the PSR and defendant did not object to them).

For example, on June 7, 2020—shortly before the first carjacking in this case—defendant got into a verbal dispute with the mother of his children and sprayed her in the face with pepper spray. (PSR ¶ 83). Defendant then used his vehicle to ram the victim's vehicle four times, causing it to roll over with the victim and another person (D.T.) still inside. (*Id.*). Defendant was charged with two counts of Second-Degree Assault with a Dangerous Weapon as a result.

On October 24, 2020, defendant approached a person in their vehicle, brandished a handgun, and told them to "give me all the cash or I'm going to shoot you." (PSR ¶ 88). When the victim denied having cash, defendant grabbed the victim's backpack and fled. He later used the victim's credit cards to make purchases at stores. (*Id.*). Defendant was charged with First-Degree Aggravated Robbery as a result.

Around this same time, defendant and Benjamin stole a dark blue Dodge Ram truck, which they then used in a series of other violent crimes. (PSR ¶ 58). On October 30, 2020, for example, defendant attempted to leave a retail store without paying for certain items.

(PSR ¶ 90).  An employee confronted defendant, and defendant responded by spraying the employee in the face with pepper spray.  (PSR ¶ 90). Defendant and Benjamin then fled the scene in the stolen Dodge Ram.  (PSR ¶ 58).  Defendant was charged with Simple Robbery as a result.  (PSR ¶ 90).

On November 9, 2020, defendant and Benjamin committed a retail theft at JC Penney's store.  (PSR ¶ 58).  When confronted by an employee, defendant sprayed the employee with pepper spray and brandished a black handgun, saying "I'll [expletive] shoot you."  (PSR ¶ 58).  Once again, they fled the scene in the stolen Ram truck.  (PSR ¶ 58).

On November 14, 2020, the defendant and Benjamin attempted to leave a retail store without paying for merchandise.  (PSR ¶ 85).  When employees attempted to confront them, defendant sprayed the employees with a fire extinguisher and brandished a collapsible baton at them.  (PSR ¶ 85).  Another employee approached shortly thereafter, leading defendant to threaten the employee by telling Benjamin "Babe, get my gun."  (*Id.*). Defendant and Benjamin fled the scene in the stolen Ram truck.  (PSR ¶¶ 58, 85).  Police attempted to stop them but defendant ran a red light and sped away.  (PSR ¶ 85).  Defendant was charged with First-Degree Aggravated Robbery as a result.

On December 7, 2020, first responders found defendant and Benjamin sleeping in another stolen truck.  (PSR ¶ 16).  As the first responders approached the vehicle, defendant woke up, put the car in gear, and sped away—striking and injuring one officer in the process.  (*Id.*)  Police found the car unoccupied a short time later and recovered the sawed-off Remington shotgun used in the August 28, 2020 carjacking (Counts 3 and 4) together with various ammunition.  (*Id.*).

8

On January 4, 2021, defendant approached two people exiting their car, brandishing what appeared to be a firearm wrapped in a plastic bag, and demanded one of victims give up their personal belongings. (PSR ¶ 93). Defendant was charged with First-Degree Aggravated Robbery as a result.

In addition to these overtly violent acts, defendant incurred numerous additional felony and misdemeanor charges during this time, including: one case of First-Degree Burglary of an Occupied Dwelling (PSR ¶ 73); two cases of Second-Degree Burglary of a Dwelling (PSR ¶¶ 92, 94); six cases of Third-Degree Burglary (PSR ¶¶ 74, 77-80, 87); two cases of Receiving Stolen Property (PSR ¶¶ 75, 82); two cases of Financial Transaction Card Fraud (PSR ¶¶ 80-81); four cases of Theft (PSR ¶¶ 74, 76-77, 95); and one case of Fleeing Police in a Motor Vehicle (PSR ¶ 82).

In short, defendant's carjackings were not isolated incidents, but were just one part of a larger pattern of violent and criminal behavior that terrorized the community for months. As with the carjackings, defendant (and not his accomplice) was the person possessing firearms, and threatening and using violence. A lengthy custodial sentence is necessary to account for the full scope of defendant's conduct during this time.

    C.    **Defendant's Criminal History Supports a Lengthy Sentence**

Although defendant's criminal history is not as aggravating as the nature and circumstances of his crimes, it nonetheless supports a lengthy custodial sentence. Despite being only 24 years old, defendant already has a significant criminal history that includes two convictions for Fifth Degree Drug Possession, one conviction for Second-Degree Burglary, and one conviction for Tampering with Vehicles—all in 2019. (PSR ¶¶ 62-65).

9

While none of these past convictions are remotely as serious as the present offense, the defendant's criminal record demonstrates how prior judicial interventions (short of lengthy imprisonment) have failed to protect the public or deter defendant from committing crimes.

For each of his past crimes, defendant has received short sentences of incarceration followed by a period of probation. In each case, however, defendant has repeatedly violated the terms and conditions of his probation, and even had his probation revoked on three occasions. (PSR ¶¶ 62-65). For example, he has had numerous probation violations filed and warrants issued for his arrest for such things as failing to complete chemical health assessments and failure to maintain contact with his probation officer. More concerning, however, is the fact that defendant has utterly failed to remain law abiding even while under supervision of the courts. Since his (first) Fifth-Degree Drug Possession conviction in 2019, all of defendant's convictions have come while on probation from a previous offense. Indeed, in 2020, when defendant engaged in the violent crime spree that currently brings him before the Court, he was on probation for three previous felonies. (PSR ¶¶ 63-65). This demonstrates that a lengthy term of incarceration is necessary both to protect the public from defendant and adequately deter him from committing crimes.

### D. Defendant's History and Characteristics

In contrast to the aggravating nature of the offense and his criminal history, the government agrees that defendant's personal history and characteristics are, on the whole, mitigating. As summarized in the PSR, the defendant had a difficult childhood, during which he was exposed to violence and substance abuse. Defendant has been homeless during the period of his residency in Minnesota and lived for a time in a "tent city."

Defendant also reports a history of mental illness, including suicide ideation, and has a documented history of severe, untreated, substance abuse. Specifically, defendant reports daily abuse of serious drugs including methamphetamine, heroin, and fentanyl, and claims to have committed thefts to support his drug use. The Court may consider these to be mitigating factors in fashioning a sentence, but the government believes the mitigating nature of these factors is somewhat limited by the lack of evidence that defendant's carjackings were motivated by poverty or drug addiction.

In addition, the government notes that defendant's acceptance of responsibility is a mitigating factor. Defendant accepted responsibility for his charged crimes by pleading guilty before a motions hearing in this case. He also admitted to (or did not object to) conduct beyond what was alleged in the Indictment, including an uncharged carjacking and the array of other violent conduct summarized in the PSR. This kind of acceptance of personal responsibility provides reason to hope that defendant can refrain from returning to similar criminal conduct upon release from prison.

Any mitigating factors, however, must be balanced against the aggravating factors, including the extremely serious nature of the offense, in which defendant effectively terrorized the community for several months with over a dozen acts of violence. Thus, while the mitigating factors in this case obviate the need for a sentence *above* the advisory Guidelines range, they are substantially outweighed by the aggravating factors such that a sentence at the top of the Guidelines range is necessary. Only a sentence at the top of the range accounts for both the mitigating and aggravating aspects of defendant's personal history, while at the same time reflecting the seriousness of the offense, promoting respect

for the law, providing just punishment for the offense, affording adequate deterrence, and protecting the public from further crimes of the defendant.

## **CONCLUSION**

For all the foregoing reasons, the United States respectfully recommends that the Court sentence defendant to a term of imprisonment of 209 months, consisting of 125 months on Count 3, and 84 months on Count 4 to be served consecutively.

Respectfully submitted,

Dated: December 30, 2021

CHARLES J. KOVATS, Jr.
Acting United States Attorney

*/s/ Nathan H. Nelson*

BY:  NATHAN H. NELSON
Assistant U.S. Attorney
Attorney ID No. 0388713